**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 99-51197**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**FELIPE NAVA-PEREZ, also known as**
**Mario Lugo-Rodriguez, also known**
**as Jimmy De La Fuente, also known**
**as Jimmy De La Fuentes, also known as**
**Mario Lugo, also known as Mario R. Lugo,**
**also known as Mario Hugo, also known**
**as Mario Rodriguez, also known as**
**Jimmy DeLaFuente, also known as Mario Lug,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Western District of Texas**
_____

February 12, 2001

Before WIENER, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

The sole issue on appeal is whether Felipe Nava-Perez, an alien, is subject to the imposed _enhanced penalty_, under 8 U.S.C. § 1326(b)(2), for removal "subsequent to a conviction for commission of an aggravated felony", based upon the following: after having been deported (equivalent to being removed), he reentered the United States illegally; was convicted for an aggravated felony; was removed pursuant to the summary removal

procedure set forth in 8 U.S.C. § 1231(a)(5) ("prior order of removal is reinstated from its original date"); reentered the United States once again; and was convicted for illegal reentry, in violation of 8 U.S.C. § 1326. We **AFFIRM**.

I.

Nava-Perez was deported from the United States in July 1997. He reentered the United States illegally; in September 1998, he was convicted for an aggravated felony in Texas (cocaine possession). Following that conviction, his 1997 deportation order was reinstated pursuant to 8 U.S.C. § 1231(a)(5); in May 1999, he was deported — for the second time. Less than two months later, he was again found in the United States.

As a result, Nava-Perez was indicted on one count of illegal reentry, in violation of 8 U.S.C. § 1326. In addition, the Government filed a notice of enhanced penalty, pursuant to 8 U.S.C. § 1326(b)(2) (increasing statutory maximum sentence to 20 years for "any alien ... whose removal was subsequent to a conviction for commission of an aggravated felony"). Nava-Perez pleaded guilty.

The Presentence Investigation Report assigned a base offense level of 8. Because of Nava-Perez's prior aggravated felony conviction, his offense level was increased by 16 levels, pursuant to U.S.S.G. § 2L1.2(b)(1)(A) (16-level increase for unlawfully reentering United States after having been deported following aggravated felony conviction). He received a three-level

2

adjustment for acceptance of responsibility, resulting in a total offense level of 21. With a criminal history category of VI, the guideline sentencing range was 77 to 96 months. Nava-Perez's objection to the 16-level increase was overruled; he was sentenced to 77 months imprisonment.

## II.

Nava-Perez contests the enhancement. In a supplemental brief, relying on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), he also maintains: the enhancement violated due process because the indictment failed to allege a prior conviction; and, without that conviction, his sentence exceeds the statutory maximum for illegal reentry.

## A.

The statutory maximum sentence for illegal reentry is two years. 8 U.S.C. § 1326(a). But, as noted, the maximum is increased to 20 years for "any alien ... whose *removal* was subsequent to a conviction for commission of an aggravated felony". 8 U.S.C. § 1326(b)(2) (emphasis added). The Sentencing Guidelines implement that provision by specifying a 16-level increase in the offense level for unlawful reentry into the United States after having been deported following a criminal conviction for an aggravated felony. U.S.S.G. § 2L1.2(b)(1)(A).

Nava-Perez maintains he is *not* subject to the enhancement, claiming his second removal, in 1999, *was effective in 1997, before*

3

his commission of the aggravated felony in 1998. As stated, Nava-Perez's second removal in May 1999, *after* his 1998 aggravated felony conviction, was accomplished pursuant to 8 U.S.C. § 1231(a)(5):

> If the Attorney General finds that an alien has reentered the United States illegally *after* having been removed or having departed voluntarily, under an order of removal, *the prior order of removal is reinstated from its original date* and is *not* subject to being reopened or reviewed, the alien is *not* eligible and may *not* apply for any relief under this chapter, and *the alien shall be removed under the prior order at any time after the reentry*.

8 U.S.C. § 1231(a)(5) (emphasis added).

The plain language of that section, according to Nava-Perez, means that, by operation of law, 1997 was the effective date of his second removal, *even though it occurred in 1999*, because the second removal was based on the reinstated 1997 removal order. Therefore, he claims, his removal in 1999 was *not* subsequent to his 1998 aggravated felony. Alternatively, Nava-Perez contends that, if we determine the statute is ambiguous, the rule of lenity requires our holding the enhancement inapplicable.

The district court's interpretation of § 1231(a)(5), as well as its application of the Sentencing Guidelines, are reviewed *de novo*. *E.g.*, **United States v. Norris**, 217 F.3d 262, 273 (5th Cir. 2000) (Sentencing Guidelines); **United States v. Rasco**, 123 F.3d

4

222, 226 (5th Cir. 1997), *cert. denied*, 522 U.S. 1083 (1998) (statutory interpretation).

Contrary to Nava-Perez's interpretation of § 1231(a)(5), it does *not* treat the alien's *removal* as effective "from its original date". Instead, it provides: "the prior *order of removal* is reinstated from its original date". 8 U.S.C. 1231(a)(5) (emphasis added). It authorizes removal under the prior order "at any time *after* the reentry". *Id*. (emphasis added). In short, the statute plainly contemplates, *after* the reentry, a *second removal*, under the reinstated prior order.

Nava-Perez confuses reinstatement of the "order of removal" with his actual removal under that reinstated order. He was removed twice: once in 1997, and again in 1999, *after* his 1998 aggravated felony conviction. Although both removals are based on the same 1997 order, with the second being based on the order's reinstatement, they are, nevertheless, *separate removals*. Because the 1999 removal was subsequent to 1998, when Nava-Perez committed an aggravated felony, he was subject to the enhanced penalty pursuant to the plain, unambiguous language of § 1326(b)(2) and U.S.S.G. § 2L1.2(b)(1)(A).

### B.

Nava-Perez contends that, under ***Apprendi***, his sentence violated due process because it exceeded the two-year maximum punishment for the offense charged. He concedes this contention is

5

foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998) (8 U.S.C. § 1326(b)(2) is penalty provision and does *not* define separate crime; therefore, prior conviction supporting sentence enhancement does *not* have to be charged in indictment), but maintains *Apprendi* has cast *Almendarez-Torres* into serious doubt.

As Nava-Perez recognizes, we *cannot* overrule Supreme Court precedent. Instead, he raises the issue to preserve it for possible review by the Supreme Court.

III.

For the foregoing reasons, the judgment is

*AFFIRMED*.